# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| OLATUNJI ALABI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Case No.: 09-cv-4757 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| HOMECOMINGS FINANCIAL LLC, and ) | |
| MORTGAGE ELECTRONIC REGISTRATION ) | |
| SYSTEMS, INC. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion to dismiss [67] filed by Defendants Homecomings Financial LLC and Mortgage Electronic Registration Systems, Inc. For the reasons set forth below, the Court grants Defendants' motion to dismiss [67].

## I. Background[1]

Plaintiff Olatunji Alabi immigrated to this country from Nigeria in 1999, along with his wife and four children. (Am. Compl. ¶ 14). In August 2003, he purchased a home on Chicago's south side, paying approximately $70,500. (*Id.* ¶ 18). Mr. Alabi financed this purchase with a mortgage loan assumed by Defendant Homecomings Financial LLC and serviced by Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"). (*Id.* ¶¶ 19-20, 26-27). Shortly thereafter, Mr. Alabi's wife was diagnosed with cancer. She died two months later. (*Id.* ¶ 22). After his loss, Mr. Alabi struggled to earn enough money to make his mortgage payments while taking care of his children alone. (*Id.* ¶¶ 23-25).

---

[1] For purposes of Defendants' motion, the Court assumes as true all well-pleaded allegations set forth in Plaintiff's amended complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada*, *N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

On July 26, 2004, Defendants filed a foreclosure action against him. (*Id.* ¶ 26). A few months later, Defendants presented Mr. Alabi with a proposed repayment agreement in lieu of foreclosure—an agreement that Plaintiff alleges contained false and inaccurate statements as to the amount owed. This agreement required acceptance in the form of a $1,000 payment to be received by Defendants. (*Id.* ¶¶ 30-31, Ex. B). Mr. Alabi transferred the $1,000 payment, but alleges that Defendants did not credit that payment or return the money and instead continued with the foreclosure action. (*Id.* ¶¶ 32-37).

On March 4, 2005, less than a year after the foreclosure action was filed and shortly after he learned that his thirteen year-old daughter was seriously ill with a brain tumor, Mr. Alabi filed a voluntary Chapter 13 petition for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. The bankruptcy was confirmed, and on August 22, 2005, an order was entered which directed Mr. Alabi to make monthly payments to Defendants in the amount of $662.97. (*Id.* ¶¶ 40, 42). Despite his difficult circumstances, Mr. Alabi made payments to Defendants and his other creditors pursuant to his Chapter 13 plan. Each payment was made to Defendants by certified money order. Mr. Alabi's amended complaint alleges that through his September 2006 payments, he either was current on his mortgage payments pursuant to the August 22, 2005 order, or nearly so. (*Id.* ¶¶ 43-44).

On October 27, 2006, Defendants filed a motion to modify the automatic stay to allow foreclosure proceedings to move forward. Defendants' motion asserted that Mr. Alabi's post-petition mortgage payments were $1,195.59 per month (as opposed to $662.97), that Mr. Alabi was in default with respect to the August 2005 order, that the post-petition payments through November 2006 were delinquent by $9,187.18 (including attorneys fees and costs), and that Mr.

Alabi had no equity in his home for the benefit of unsecured creditors. (*Id.* ¶¶ 46-49, Ex. E). Attached to the motion was a statement that estimated the value of the property to be $95,000.00.

In the months surrounding the filing of the stay motion, Plaintiff alleges that Defendants made a series of misrepresentations. First, in a letter dated September 5, 2006, Defendants wrote to Mr. Alabi maintaining that his monthly mortgage payment had been reset such that he would now owe a monthly "escrow" payment of $20,060,201.[2] (*Id.* ¶ 45, Ex. D). Then on December 4, 2006, three days before the hearing on the stay motion, Defendants' attorneys sent Mr. Alabi a letter setting forth another recalculation of his alleged default. The letter asserted that Mr. Alabi's monthly mortgage payments for the period May through September 2006 were $1,121.63, and increased to $1,195.59 only in October 2006. (*Id.* ¶¶ 50-51, Ex. G). According to Plaintiff's amended complaint, this series of communications—each of which contained a new miscalculation of Mr. Alabi's mortgage payments—was highly misleading and left Mr. Alabi concerned about whether and how he could possibly keep current on his mortgage. (*Id.* ¶¶ 44, 82, 85-88).

The bankruptcy court held a hearing on December 7, 2006.[3] Mr. Alabi appeared in court *pro se*, while Defendants were represented by counsel. Defendants' attorney represented that, since filing the stay motion, she had recalculated the default due and claimed that Mr. Alabi owed $3,382.21 (not including fees and costs), not $9,351.70. The recalculated amount took into account Mr. Alabi's contention regarding what his monthly payment was. Mr. Alabi still contested the new calculation, and the bankruptcy judge directed the parties to discuss the issue outside the courtroom. (*Id.* ¶ 52, Ex. H at 2-3, 5). There, counsel presented Mr. Alabi with some

---

[2] Mr. Alabi does not allege that he believed the accuracy of that letter, which contained an error, or incurred damages proximately cause by that letter, or that the letter influenced the bankruptcy court's decision to lift the automatic stay.

[3] Mr. Alabi attached a transcript of the December 7 hearing to his amended complaint.

3

handwritten calculations, insisting that Mr. Alabi was delinquent by approximately $3,000.00. Upon return to the courtroom, Defendants' counsel admitted to having "kind of lost [her] temper" with the *pro se* debtor because he was not understanding what she meant when she told him that she had recalculated the default based on Plaintiff's own figures and that there still was a default. (*Id.* ¶ 53, Ex. H at 3). After additional back-and-forth, Mr. Alabi and Defendants' counsel again left the court to attempt to reconcile Mr. Alabi's payments. On their return to the courtroom, the parties still were unable to reach a consensus on how much was due. Defendants' counsel continued to insist that Mr. Alabi had missed two months' payments and argued that he also missed two additional months because his checks had been returned NSF – for "not sufficient funds." (*Id.* ¶ 54, Ex. H at 8-9). Mr. Alabi maintained that the checks had not been returned NSF (*id.* ¶ 55, Ex. H at 9), but he was unable to present proof of payment in open court. Mr. Alabi maintains that his checks could not have been returned NSF because they were certified money orders. (*Id.* ¶ 55, Ex. J).

At that point, the bankruptcy judge questioned Mr. Alabi on what payments he had made.[4] Although Mr. Alabi continued to express his frustration that Defendants were unable to determine how much was owed, he eventually admitted that, at the time Defendants filed the stay motion in October, he was "down two months" and that at the time of the hearing, he had not paid the October, November, or December payments. Although he reminded the court that he had until December 15 to pay the December payment, he admitted that he was "two months short, yes." According to the transcript, Mr. Alabi notified the bankruptcy judge that he was prepared to tender the October payment in open court, but did not have money to make the November or December payments.

---

[4] It appears that the bankruptcy court accepted Mr. Alabi's position that the two payments could not have been "NSF" because the judge stated, "All right. But you agree that you are short October, November and December, correct?"

Relying on Mr. Alabi's assertion that he was, at a minimum, "two months short," the bankruptcy judge modified the stay to allow Defendants' foreclosure action to proceed. (*Id.* ¶ 56, Ex. H at 10). According to the amended complaint, approximately two to three weeks after the hearing, Mr. Alabi sent Defendants $2,000 sufficient to cover all three months, but this payment was rejected.[5] (*Id.* ¶¶ 49, 71-72). In January 2007, Mr. Alabi filed a motion to vacate the order modifying the automatic stay, which the court denied on January 25. A foreclosure "sale" was held on February 2, 2007, with the Judicial Sales Corporation selling Mr. Alabi's house to Defendant MERS for $84,183.58. (*Id.* ¶ 59). Mr. Alabi and his family were evicted, and their belongings were removed from the home at the direction of Defendants on August 30, 2007. (*Id.* ¶¶ 60-61). Public records reveal that Mr. Alabi's house was purchased approximately 10 months later for $175,000. (*Id.* ¶ 62).

On August 4, 2009, Plaintiff filed a *pro se* complaint before this Court. On its own motion, the Court appointed counsel for Plaintiff on February 11, 2010. Counsel withdrew on March 9, 2010. On March 11, 2010, the Court appointed a second attorney for Plaintiff, but Plaintiff's second counsel withdrew due to a conflict in November 2010. The Court appointed a third counsel on November 10, and on January 12, 2011, Plaintiff through counsel filed an amended complaint against Defendants for relief under Rule 60(d) and for violations of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* ("CFA") and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* ("DTPA").[6] On March 8, 2011, Defendants moved to dismiss all claims asserted in the amended complaint.

---

[5] The money order is dated December 23, 2006. Plaintiff's payments were due by the 15th of each month.

[6] The Court recognizes that *pro bono* appointed counsel have dedicated hundreds of hours to assisting Mr. Alabi to develop and pursue this case and thanks counsel for their excellent service, both to their client and to the Court.

5

## II. Legal Standard for Rule 12(b)(6) Motions to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 569 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 562. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III. Analysis

### A. Rule 60(d)

Approximately two and a half years after the bankruptcy court modified the automatic stay that allowed Defendants to proceed with foreclosure, Plaintiff filed a complaint in this Court. In his lawsuit, Plaintiff seeks to vacate the order of the bankruptcy court under Federal Rule of Civil Procedure 60(d) because, according to Plaintiff, Defendants committed fraud upon the bankruptcy court.

The normal procedure for attacking a judgment is by motion in the court that rendered the judgment. 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2868 at 404 (2d ed. 1995). However, Rule 60(d)(1) allows a court to "entertain an independent action to relieve a party from a judgment, order, or proceeding," while Rule 60(d)(3) permits a judgment to be set aside at any time based on a fraud on the court. Rule 60(d) is limited to injustices that are sufficiently gross to permit departure from the usual rules. *United States v. Beggerly,* 524 U.S. 38, 46 (1998) (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 244 (1944)). An independent action is limited to preventing a grave miscarriage of justice. *Beggerly,* 524 U.S. at 47; *Porter v. Chicago Sch. Reform Bd. of Tr.,* 187 F.R.D. 563, 566 (N.D. Ill. 1999); see also *Peach v. Laborers' Intern. Union of North America*, 2010 WL 502767, at *3 (S.D. Ill. 2010); *Hasham v. California State Bd. of Equalization*, 2008 WL 4091002, at *4 (N.D. Ill. 2008). It does not apply to failure of a party to furnish accurate information that could be a basis for a Rule 60(b)(3) motion. *Beggerly,* 524 U.S. at 46. Where an independent action for relief from a judgment is brought in a court other than the one that rendered judgment, independent grounds of subject matter jurisdiction are needed. See *Federal Practice and Procedure*, § 2868 at 403-04; see also *Block v. Block,* 196 F.2d 930, 932 (7th Cir. 1952).

Additionally, "fraud on the court" is different from the fraud covered by Rule 60(b)(3).[7] "The term ['fraud on the court'] refers to conduct more egregious than anything here, conduct

---

[7] Relief from judgment under Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances. See *Del Carmen v. Emerson Electric Co.*, 908 F.2d 158, 161 (7th Cir. 1990). Rule 60(b) motions exist to allow courts to overturn decisions where "special circumstances" justify an "extraordinary remedy." *Cash v. Illinois Div. of Mental Health*, 209 F.3d 695, 698 (7th Cir. 2000). Rule 60(b) motions premised upon fraud must be brought "no more than a year after the entry of the judgment or order or date of the proceeding." Fed. R. Civ. P. 60(c)(1). This time limit is jurisdictional and cannot be extended. *Arrieta v. Battaglia*, 461 F.3d 861, 864 (7th Cir. 2006). Plaintiff's lawsuit thus comes too late to seek relief under Rule 60(b), because the judgment or order that Plaintiff seeks to vacate was entered in December 2006, and Plaintiff did not file this lawsuit until August 2009.

that might be thought to corrupt the judicial process itself, as where a party bribes a judge or inserts bogus documents into the record." *Oxxford Clothes XX, Inc. v. Expeditors Int'l of Wash., Inc.,* 127 F.3d 574, 578 (7th Cir. 1997); see also *Boyer v. GT Acquisition LLC,* 2007 WL 2316520, at *4-5 (N.D. Ind. Aug. 9, 2007). Fraud on the court also has been described as fraud "directed to the judicial machinery itself, and which involves circumstances where the impartial functions of the court have been directed corrupted." *In the Matter of Whitney-Forbes, Inc.*, 770 F.2d 692, 698 (7th Cir. 1985) (citing *Bulloch v. United States*, 721 F.2d 713, 718 (10th Cir. 1983), and noting that alleged conduct would have to rise to the level of "bribery of a judge" or "improper influence with the court" to constitute fraud on the court) (internal citations omitted).

In *Oxxford*, the Seventh Circuit held that the defendant did not commit fraud on the court when it misrepresented that it had valid liens. As further stated in *Oxxford*: "A lie uttered in court is not a fraud on the liar's opponent if the opponent knows it's a lie yet fails to point this out to the court. If the court through irremediable obtuseness refuses to disregard the lie, the party has * * * a remedy by way of appeal. Otherwise 'fraud on the court' would become an open sesame to collateral attacks, unlimited as to the time within which they can be made by virtue of the express provision in Rule 60(b) on this matter, on civil judgments." 127 F.3d at 578. The heightened standard applied in Rule 60(d) situations reflects the balancing of equitable considerations with the finality of judgments: equitable considerations often prevail over considerations of finality of judgments in granting relief from a judgment within one year; the finality of judgment prevails thereafter. See *Great Coastal Express, Inc., v. Int'l Bd. of Teamsters*, 675 F.2d 1349, 1356 (4th Cir. 1982).

Here, Mr. Alabi clearly alleges errors in calculating the post-petition delinquency. He further alleges that he did not owe the amounts purported to be due in the motion presented to the

bankruptcy court and that a pre-petition payment he made to Defendants was not credited. However, in the transcript attached to the amended complaint, the bankruptcy court credited his assertions but still found that he owed more money than he was able to pay on the date of the hearing. First, although Defendants' counsel acknowledged that there was "an ongoing dispute about the correct amount of the payment," she conceded that "for the purposes of arguing it today, I was calculating the default based on the $662.97." The amount of $662.97 was the amount Plaintiff that maintained he owed each month. Although defense counsel continued to argue that Mr. Alabi owed more than two months, the transcript demonstrates that the bankruptcy judge rested her decision on Mr. Alabi's representation that he was short at least one month (not counting December) in deciding to lift the stay. Mr. Alabi admitted that (1) he had not made the October, November, or December 2006 payments, (2) at the time of the hearing he had the funds available to pay only the amount due for the October payment, and (3) he hoped to have funds to pay the December payment by December 15. The bankruptcy judge clearly stated, "Two months are due, and December is due," to which Mr. Alabi replied, "Yes." She then modified the stay. Thus, notwithstanding Defendants' alleged errors, the bankruptcy judge lifted the stay based on the facts that Plaintiff believed (and acknowledged) to be accurate, not based on the alleged errors.[8]

---

[8] In his response brief, Plaintiff relies upon *Lonsdorf v. Seefeldt,* 47 F.3d 893, 897 (7th Cir. 1995), to support his claim under Rule 60 for fraud on the court. But *Lonsdorf* addressed the requirements to obtain relief from a final judgment under Rule 60(b)(3), which governs a motion for relief from judgment filed within one year from the entry of the judgment based upon fraud (intrinsic or extrinsic), misrepresentation, or misconduct by the opposing party, not Rule 60(d). See *United States v. Beggerly*, 524 U.S. 38, 46 (1998) (explaining the heightened standard that applies to independent actions to set aside a judgment for fraud on the court over the standard applicable to Rule 60 motions brought within one year: "Independent actions must, if Rule 60(b) is to be interpreted as a coherent whole, be reserved for those cases of 'injustice which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of *res judicata*." Having no need to address the issue, the court did not find that the conduct constituted fraud on the court and did not address the requirements to state a claim for an independent action to set aside a judgment for fraud on the court. Further, unlike the facts disclosed in *Lonsdorf*, the facts alleged in the amended complaint and set forth in the December 7

Although the circumstances surrounding the foreclosure action and the result reached by the bankruptcy court are extremely unfortunate in a multitude of ways, the allegations do not rise to the level of "fraud on the court" such that the bankruptcy court's decision could be vacated or subject to collateral attack. That being said, the manner in which Defendants handled Mr. Alabi's mortgage, and the attendant circumstances, leaves much to be desired and casts the mortgage industry in a poor light, even given the "harsh" reality of mortgage foreclosure actions. See Defs. Reply at 7.

B.   **State law claims[9]**

In addition to seeking relief by way of Rule 60(d), Mr. Alabi also contends that Defendants violated the Illinois Consumer Fraud Act ("ICFA") and the Illinois Uniform Deceptive Trade Practices Act ("IDTPA"). Counts II and III seek redress for three allegedly

---

transcript show that any alleged fraud did not prevent plaintiff from fully and fairly presenting his case before Judge Sonderby.

[9] The Court's analysis of Plaintiffs' state law claims applies equally to both Defendants. However, the Court also notes that Plaintiff's state law claims against Defendant MERS are time-barred. Section 10a(e) of the ICFA establishes a three-year statute of limitations, and the three-year limitations period also applies to claims under the Uniform Deceptive Trade Practices Act. See *McCready v. Illinois Secretary of State*, 888 N.E.2d 702, 709-10 (Ill. App. Ct. 3d Dist. 2008). Mr. Alabi did not file any action against MERS until he filed his amended complaint on January 12, 2011, at which time he added MERS as a defendant. He alleges that the actionable conduct occurred on and prior to December 7, 2006, and that he was evicted on August 30, 2007. More than three years passed between those events and the addition of MERS as a defendant, and the state law claims against MERS do not relate back to his original, timely-filed complaint. Relation back is not appropriate in this case because failing to name MERS—and instead naming Accredited Home Lenders—does not constitute "a mistake concerning the party's identity," as required by Federal Rule of Civil Procedure 15(c). Plaintiff asserts that when he brought his suit against Homecomings, MERS should have suspected a mistake had been made, but Plaintiff does not allege how MERS knew (or should have known) of this action. In *Krupski v. Costa Crociere S.p.A.,* 130 S. Ct 2485 (2010), cited by Plaintiff, the Supreme Court held that the amended pleading related back because the lower court found that the newly added defendant had constructive notice of the original complaint. 130 S. Ct. at 2492. Here, Plaintiff does not present any facts that MERS had any notice of this action prior to service of the amended complaint. Furthermore, even if Plaintiff could demonstrate the absence of prejudice to MERS, this alone does not permit an amendment. The absence of prejudice becomes an issue only after the plaintiff shows that the new party knew or should have known that the plaintiff, but for a mistake, would have sued it in the prior complaint. See *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559-560 (7th Cir. 2011).

false statements made by Defendants in a letter to Mr. Alabi dated December 4, 2006, and another false statement made in a letter to Mr. Alabi dated September 5, 2006. Defendants contend, among other things, that the bankruptcy code preempts Mr. Alabi's state law fraud claims.[10]

A state law claim will be preempted if it "arises under" the bankruptcy code, or if it is related to a case under Title 11.[11] See, *e.g.*, *In re Lenior*, 231 B.R. 662, 675 (Bankr. N.D. Ill. 1999) (rejecting state law unjust enrichment counts premised on allegedly inflated proofs of claim; noting that the bankruptcy code has "its own comprehensive scheme to guard against fraud and remedy it"); *Cox v. Zale Delaware, Inc.*, 1998 WL 397841, at *5 (N.D. Ill. 1998) (state law consumer fraud counts were preempted by the bankruptcy code, whose "expansive reach * * * preempts virtually all claims relating to alleged misconduct in the bankruptcy courts"). Plaintiff contends that his ICFA and IDTPA claims are based only on statements made outside of

---

[10] Many of the cases discussing the interplay between the bankruptcy code and consumer protection statutes deal with the Fair Debt Collection Practices Act. When two federal statutes, such as the FDCPA and the bankruptcy code, intersect, "[p]reemption is not the applicable doctrine under these circumstances, since the question whether one federal law takes precedence over another does not implicate the Supremacy Clause." *Coker v. Trans World Airlines, Inc.,* 165 F.3d 579, 583 (7th Cir. 1999). But here, when the conflict is between federal and state law, preemption may be appropriate. In any event, whether the Court uses the term preemption or preclusion, the analysis comes down to whether the bankruptcy code provides sufficient protection for Plaintiff or whether resort to state law remedies is appropriate to protect his interests.

[11] Typically, "[d]ebtors in bankruptcy proceedings do not need protection from abusive collection methods that are covered under [statutes governing debt collection practices] because the claims process is highly regulated and court controlled." *B–Real LLC v. Rogers,* 405 B.R. 428, 432 (M.D. La. 2009) (footnote omitted) (internal quotation marks omitted). While the purpose of consumer protection statutes is to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a debtor is instead protected by the court system and its officers. *Id*. "It is beyond cavil that past bankruptcy practice, as well as explicit bankruptcy code provisions, have left the remedy for fraudulent and otherwise defective proofs of claim to the bankruptcy code." *Baldwin v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark,* 1999 WL 284788, at *4 (N.D. Ill. Apr. 26, 1999); see also *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 510 (9th Cir. 2002) ("Nothing in either [the bankruptcy code or the FDCPA] persuades us that Congress intended to allow debtors to bypass the Code's remedial scheme when it enacted the FDCPA. While the FDCPA's purpose is to avoid bankruptcy, if bankruptcy nevertheless occurs, the debtor's protection and remedy remain under the bankruptcy code.").

11

the bankruptcy court and thus are not preempted by the bankruptcy code. However, Plaintiff's allegations in Counts II and III that Defendants misrepresented the equity in the property rely primarily upon pleadings filed in the bankruptcy proceeding. Furthermore, the letter sent by Defendants on December 4, 2006, clearly relates to the bankruptcy proceeding. The letter, addressed to Mr. Alabi, states:

> As you are aware, the pending Motion to Modify Stay was continued to December 7, 2006. Enclosed please find a payment history reflecting payments received by Homecomings Financial Networks from the commencement of this case. If you have any proofs of payment that are not reflected on this enclosure, please bring a copy of the front and back of the payment to court on December 7, 2006 so that I may investigate.

The letter then calculates the updated default and concludes by stating that the undersigned "look[s] forward to resolving this motion at the hearing on December 7, 2006." In essence, Plaintiff is alleging that Defendants acted deceptively, or fraudulently, in misrepresenting (in the December 2006 letter) the amount of Plaintiff's payments, Plaintiff's proofs of payment, the principal amount, and the value of Plaintiff's home—all issues that were before the bankruptcy court when it decided whether Plaintiff was in default and resolved the motion to modify the stay. The letter of December 2006 clearly was related to the bankruptcy and addressed issues that were squarely before the bankruptcy court.

Furthermore, the bankruptcy court lifted the automatic stay based upon Plaintiff's acknowledgement of the default and not based on any representations by Defendants. In order to state a cause of action under the ICFA, a plaintiff must plead actual damages proximately caused by the deception. See *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801, 850 (Ill. 2005). In other words, a plaintiff must show that the conduct by which the defendant intended to deceive the plaintiff proximately cause the plaintiff's injury. See *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). Plaintiff cannot show that Defendants' alleged

misrepresentations caused his injury, as the bankruptcy court explicitly accepted Plaintiff's representations, not Defendants' alleged misrepresentations, in deciding to modify the stay.

The September 2006 letter is slightly different. Plaintiff maintains that the statement in the letter that his monthly escrow installments increased to $20,060,201 constitutes a materially false and deceptive statement. Because the letter does not reference the bankruptcy proceeding and appears to be a form letter generated by Homecomings Financial to address the terms of Plaintiff's loan, its relationship to the bankruptcy proceeding is not as obvious. As with the December letter, at the time of the September letter, Plaintiff's mortgage payments were dictated by the August 22, 2005 order entered by the bankruptcy court, which directed Mr. Alabi to make monthly payments to Defendants in the amount of $662.97. Furthermore, in order to proceed with foreclosure, Defendants would have had to go through the bankruptcy court. Thus, the protections afforded by the Bankruptcy Code likely cover both letters, even if the September letter does not evince as clear a nexus to the bankruptcy proceeding as the December letter.

However, at a minimum, Plaintiff's ICFA claim based on the September letter fails because the misrepresentation did not cause his injury. No reasonable person would have believed, and Plaintiff does not allege that he actually believed, that the monthly escrow payments increased to $20 million. Although a plaintiff need not show actual reliance (nor diligence in ascertaining the accuracy of the misstatements) (see *Harkala v. Wildwood Realty, Inc.*, 558 N.E.2d 195, 199 (Ill. App. Ct. 1st Dist. 1990)), Mr. Alabi cannot show that this patent error proximately caused his injuries. Plaintiff maintains that "[o]bviously, Defendants' misstatements to Mr. Alabi outside the hearing—as well as their repeated misstatements in the hearing—played a critical role in these events." But that argument simply is not persuasive. Although Defendants' alleged misstatements may have confused Plaintiff, they were not relied

upon by the bankruptcy court; rather, the court credited Plaintiff's position, but still found that he had defaulted on his obligations, which in turn caused his injury.[12] While the letters may have upset Plaintiff and caused him unnecessary stress, they did not proximately cause his injury—Plaintiff's failure to meet the minimum obligations required of him under the bankruptcy order did, and Defendants' refusal to give him any additional leeway (which they were not legally required to do) led to Plaintiff's injury.

Finally, to the extent that Plaintiff's IDTPA claim is not preempted or precluded by the Bankruptcy Code, Plaintiff's IDTPA claim does not state a cause of action. "Although the [IDTPA] was intended to protect business people, a consumer action is permissible if the consumer can allege facts which would indicate that he is 'likely to be damaged' in the future." Greenberg v. United Airlines, 563 N.E.2d 1031, 1037 (Ill. App. Ct. 1st Dist. 1990). However, the IDTPA allows only injunctive relief; money damages are not available. *Kensington's Wine v. John Hart Fine Wine*, 909 N.E.2d 848, 857-58 (Ill. App. Ct. 1st Dist. 2009); see also *Glazweski v. Coronet Insurance Co.,* 483 N.E.2d 1263, 1267-68 (Ill. 1985). Here, Mr. Alabi does not allege any current conduct by Defendants that could cause him damages in the future. The alleged misconduct occurred in 2006. He does not allege that he has a current relationship with Defendants. Instead, he alleges that his damages already have been incurred. Although he maintains that he may suffer harm in the future based upon prior conduct, that allegation does not support an action under the DTPA, given that only injunctive relief is available and there is no conduct for the Court to enjoin. See *Lawyers Title Insurance Corp. v. Dearborn Title Corp.*, 904 F. Supp. 818, 822 (N.D. Ill. 1995) (no allegations that that the defendants' acts, if not

---

[12] Plaintiff maintains that Defendants' alleged misrepresentations caused him confusion and concern. To the extent that Plaintiff maintains that he suffered emotional injuries as a result of Defendants' conduct, rather than the injury caused by defaulting on his obligations and losing his home, the ICFA allows remedies only for economic injuries, not for emotional distress. See *Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1053 (Ill. App. Ct. 1st Dist. 2009).

enjoined, will cause further injury to the plaintiff); *Glazweski v. Coronet Insurance Co.,* 483 N.E.2d 1263 (1985) (plaintiffs failed to show that they are likely to be damaged by defendants' conduct in the future).

## IV.     Conclusion

For the reasons set forth above, the Court grants Defendant's motion to dismiss [67] as to all of Plaintiff's claims and dismisses this case.  In view of the discussion above, the Court believes that it would be very difficult for Plaintiff to cure the deficiencies in his case through an amended pleading.  However, given that Plaintiff has only filed one prior complaint with the assistance of counsel, Plaintiff is given 21 days to file an amended complaint if he (and counsel) believe that such a complaint would not be futile.  If no amended complaint is filed within that time, the Court will enter judgment for Defendants and against Plaintiff.

Dated:  September 21, 2011                    _____
                                              Robert M. Dow, Jr.
                                              United States District Judge